## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID SMART,** : | |
| **Plaintiff,** : | **Case No.  22-cv-5239-KNS** |
| **v.** : | |
| : | |
| **MAIN LINE HEALTH,** : | **JURY TRIAL DEMANDED** |
| **Defendant.** : | |

### AMENDED CLASS ACTION COMPLAINT

David Smart ("Plaintiff"), individually and for all others similarly- situated, submit this Amended Complaint against Main Line Health ("Main Line Health" or "Defendant"), alleging as follows:

### NATURE OF THE ACTION

1.      The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) and Pennsylvania's law relating to the confidentiality of medical records, 28 Pa. Code § 115.27, both prohibit healthcare providers from sharing health care information, medical records, and related information with third parties except as needed for a patient's treatment, payment, or with their consent.  These laws give patients a reasonable expectation of privacy in communications with healthcare providers relating to their medical conditions and treatment, because this information may not be disclosed outside the healthcare setting without notice and consent.

2.      The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, protects electronic data when it is communicated, while it is in transit, and when it is stored.  This law gives patients a reasonable expectation of privacy when they engage in electronic communications with their healthcare providers by assuring their personal health information will remain confidential and secure.

3.     Plaintiff has brought this action to redress Defendant's highly-offensive practice of placing computer code on the Main Line Health website that intercepts the characteristics and contents of communications about individual patients' past, present, and future medical conditions, concerns, symptoms, appointments, providers, treatments, medications, bills, and insurance ("individually-identifiable patient health information"), transmitting this data to Meta for analysis and, thereafter, putting this data to commercial uses benefitting both Defendant and Meta without providing notice to, or receiving consent from Main Line Health website users.

## PARTIES

4.     David Smart is an adult person who resides in the Commonwealth of Pennsylvania. Mr. Smart has been a patient of Main Line Health and has used the Main Line Health website to facilitate and inform his medical care and treatment decisions since before 2018.  Mr. Smart opened a Facebook account before 2018 and has continuously maintained this account to the present.

5.     Main Line Health is a non-profit health system with a corporate office in Radnor, Pennsylvania (Montgomery County) that consists of four acute care hospitals (Lankenau Medical Center, Bryn Mawr Hospital, Paoli Hospital and Riddle Hospital) and Bryn Mawr Rehabilitation Hospital.  Main Line Health encourages its patients, which number in the thousands, to provide and receive individually-identifiable patient health information through its website to attract patients, enable their pursuit of medical care, foster its provision of that medical care, and support its business.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.*

7.     This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 and 1711-15 ("CAFA"), expressly provides federal courts with jurisdiction over any class action in which: the proposed class includes at least 100 members; any member of the class is a citizen of a state and any defendant is a citizen or subject of a foreign state; and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in, and are subject to, personal jurisdiction in this District.  Venue is also proper in this District, because a substantial part of the events or omissions giving rise to the claim occurred in, and emanated from, this District.

## BACKGROUND FACTS

9.     A Meta Pixel is a snippet of code that a business can insert on the "back end" of its website to collect data about which pages users view, which links users click, what content users access, how much time users spend on each page, and how the website responds to users' inquiries.

10.     A business intending to add a Meta Pixel to its website identifies the data it wants to intercept, Meta writes the code to tell the Meta Pixel what to do, and Meta sends this code to the business to be added into the "back end" of its website.  Once the business installs the Meta Pixel, it automatically begins to intercept the specified data and send it to Meta.

11.     Meta analyzes the intercepted data and uses it for commercial purposes like building-out its user profiles and selling targeted advertisements.  Meta also returns the intercepted data and analysis to the business for its own commercial purposes, like understanding how people use its website and determining what ads its users see.

12.     When a person opens a Facebook account, they accept Meta's Terms, Data Policy, and Cookie Policy *via* a checkbox on the Sign-Up page, *https://www.facebook.com*, and create

their Facebook ID, the unique, persistent identifier assigned to each user.  Facebook's Data Policy requires businesses that use Meta Pixels "to have lawful rights to collect, use, and share your data before providing any data to [Facebook]."  *See* Facebook Data Policy, *https://www.facebook. com/privacy/policy/version/20220104/.*

13.    Moreover, Meta's policies expressly provide that businesses using Meta Pixels will not share data that they "know or reasonably should know... includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)."  *See* Facebook Business Tools, Term 1(h), *https://www.facebook.com/legal/terms/businesstools*; Meta Commercial Term 3, *https://www.facebook.com/legal/commercial_terms*.

14.    Instead of taking proactive steps to verify that businesses using Meta Pixels obtain the required consent, Meta uses an "honor system" under which Meta assumes these businesses "represent and warrant that [they have] provided robust and sufficient prominent notice to users regarding the Business Tool Data collection, sharing, and usage."  *See* Facebook Business Tools Terms, *https://www.facebook.com/legal/terms/businesstools.*

15.    To attract patients, enable their pursuit of medical care, foster its provision of that medical care, and support its business, the Main Line Health website enables individual patients to engage in a wide array of communications concerning their individually-identifiable patient health information.

16.    With respect to patients' individually-identifiable patient health information, Main Line Health's Confidentiality Policy defines "privileged information" with respect to its patients to include "data regarding… diagnosis and procedures, content of medical records and any personal information" and represents "it is the policy of Main Line Health System that all employees… are required to maintain the confidentiality of all privileged information [including]

data that can be communicated… electronically… regarding… patient information (*e.g.* diagnosis, content of medical records)."  *See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https: //www.mainlinehealth.org/-/media/files/pdf/basic-content/careers/new-hire/confidentiality-policy.pdf?la=en*.

17.    With respect to patients' individually-identifiable patient health information, Main Line Health's Confidentiality Policy represents that: "Law protects the confidentiality of privileged information, and as an employee of the Main Line Health System, it is my responsibility to preserve and protect this confidentiality."  *Id.*

18.    With respect to patients' individually-identifiable patient health information, Main Line Health's Patient Privacy Policies represent that: "We are required by law to maintain the privacy of your health information" and "make sure that your PHI is kept private."  *See* Notice of Privacy Practices, *https://www.mainlinehealth.org/about/policies/patient-privacy-policies*.

19.    With respect to patients' individually-identifiable patient health information, Main Line Health's Patient Privacy Policies represent that: "uses and disclosures of PHI… permitted under the laws that apply to us will be made only with your written permission" and "except as… permitted by law, we will seek your written permission prior to using or sharing your information for marketing purposes or selling your information."  *Id.*

20.    With respect to patients' individually-identifiable patient health information, Main Line Health Patient Rights and Responsibilities represent that: "You have the right to… expect all communications and records related to care, including who is paying for your care, to be treated as private" and "have the right to… receive care in a safe setting free from any form of abuse, harassment, and neglect."  *See* Main Line Patient Rights & Responsibilities, *https://www.mainline health.org/patient-services/patient-rights-and-responsibilities*.

21.     With respect to patients' individually-identifiable patient health information, Main Line Health Web Privacy Statement represents that it "will not intentionally share [information concerning a patient's specific medical or health condition] with any third party." *See* Web Privacy Statement, *https://www.mainlinehealth.org/about/policies/web -privacy-statement.*

22.     Notwithstanding all these representations, Main Line Health designed Meta Pixels to capture both the "characteristics" of individual patients' communications with the Main Line Health website (*i.e.,* their IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers) and the "content" of these communications (*i.e.*, the buttons, links, pages, and tabs they click and view).

23.     Notwithstanding all these representations, Main Line Health installed Meta Pixels on its website and, thereafter, began to automatically receive extensive individually-identifiable patient health information from everyone who visited the website.

24.     As an example, anyone who visits Main Line Health's website and clicks on the "Conditions & Treatments" tab is presented a search bar that provides links to "information about more than 750 specific types of illness, injury and disease to help you understand the different kinds of treatment options and find the right doctor or service for your needs." Someone who clicks on the "Breast Cancer" button is directed to a page, *https://www.mainlinehealth.org/conditions-and-treatments/conditions/breast-cancer*, which includes buttons and links that provide information about specific conditions, treatment options, services, locations, doctors, and clinical trials, each with a separate link. Selecting any of these links, like "Breast Surgery," directs them to a new page, like *https://www.mainlinehealth.org/specialties/breast-surgery*, providing more information about breast surgeries, treatment options, services, related providers, and locations, many of which have additional links and buttons.

25.     The Meta Pixel intercepts the "characteristics" and "content" of all these communications with the Main Line Health website, including individually-identifiable patient health information (*i.e.,* about cancer care, breast cancer, breast surgery, and breast cancer clinical trials) and automatically transmits this data to Meta.

26.     After receiving individually-identifiable patient health information communicated on the Main Line Health website, Meta analyzes and uses this information for its own commercial purposes that include building more fulsome profiles of its users' preferences and traits, and selling more-targeted advertisements based on this information.   Meta also receives an additional commercial benefit from Main Line Health's use of Meta Pixels, namely that it provides Main Line Health with a greater incentive to advertise on Meta's social media platforms.

27.     After receiving individually-identifiable patient health information communicated on the Main Line Health website, Meta forwards this data, and its analysis of this data, to Main Line Health.  Main Line Health then uses this data and analysis for its own commercial purposes that include understanding how people use its website and determining what ads people see on its website.  Main Line Health also receives an additional commercial benefit from using Meta Pixels, namely that Meta pays it for access to the commercially-valuable, individually-identifiable patient health information communicated on its website.

28.     Meta is not an intended recipient of the individually-identifiable patient health information communicated on Main Line Health's website, nor is it an active or disclosed participant in these communications.

29.     Main Line Health does not notify its website users that it is automatically sending individually-identifiable patient health information communicated on its website to Meta.

30.     Main Line Health does not notify its website users that individually-identifiable patient health information they communicate on its website is being used by Meta for commercial purposes.

31.     Main Line Health does not notify its website users that it is using the individually-identifiable patient health information they communicate on its website for commercial purposes.

32.     Main Line has not secured any informed consent or written permission allowing it to use individually-identifiable patient health information communicated on Main Line Health's website for commercial purposes.

33.     Main Line Health has not secured any informed consent or written permission allowing it to share individually-identifiable patient health information communicated on its website with Meta.

34.     Main Line Health has not secured any informed consent or written permission allowing it to use individually-identifiable patient health information communicated on its website for commercial purposes.

35.     The Office of Civil Rights at the United States Department of Health and Human Services ("HHS") recently issued a release concerning online tracking technologies used by HIPAA-covered entities condemning the conduct alleged here.  *See* HHS Press Release (Exhibit 1).  In this Press Release, HHS concludes that: "HIPAA Rules apply when the information that regulated entities collect through tracking technologies or disclose to tracking technology vendors includes protected health information (PHI)" and expressly clarifies that HIPAA protects both authenticated (*i.e.,* patient portal) and unauthenticated (*i.e.,* public) pages.  *Id.*

36.     The HHS Press Release explains its conclusions that, in these circumstances, the protection of HIPAA Rules is necessary not only because tracking technologies on a regulated entity's user-authenticated webpages generally have access to PHI, including "an individual's IP

address, medical record number, home or email addresses, dates of appointments… an individual's diagnosis and treatment information, prescription information, billing information, or other information within the portal," but also because "[t]racking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions… or that permits individuals to search for doctors or schedule appointments," may have access to PHI when such tracking technologies collect information that identifies the individual.  *Id.*

## FACTS RELATING TO THE NAMED PLAINTIFF

37.     Since 2018, Mr. Smart has used Main Line Health's website to engage in communications that included individually-identifiable patient health information about his past, present, or future health conditions, including requests for information about specific Main Line Health providers and locations, and information about specific health conditions, treatments, and services.

38.     Mr. Smart did not use Main Line Health's website to share his individually-identifiable patient health information with Meta, or to enable Meta or Main Line Health to put this data to any commercial use.

39.     Main Line Health never notified Mr. Smart that it would send individually-identifiable patient health information about his past, present, or future health conditions to Meta.

40.     Main Line Health never notified Mr. Smart that either it or Meta would put individually-identifiable patient health information about his past, present, or future health conditions to their own commercial uses.

41.     Mr. Smart never provided informed consent or written permission allowing Main Line Health to send individually-identifiable patient health information about his past, present, or future health conditions to Meta.

42.     Mr. Smart never provided informed consent or written permission allowing Main Line Health or Meta to put individually-identifiable patient health information about his past, present, or future health conditions to their own commercial uses.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) for:

> All people who used Main Line Health's website and had individually-identifiable patient health information about their past, present, or future health conditions shared with Meta without notice or consent.

("the Class members").

44.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(1), because the Class members are so numerous and geographically dispersed that their joinder would be impracticable.  Plaintiff believes that Defendant's business records will permit the identification of thousands of people meeting the Class definition.

45.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(2), because there are many common questions of facts and law concerning and affecting the Class members, including:

> a.      Whether Main Line Health had a duty to protect and refrain from disclosing the Class members' individually-identifiable patient health information;
>
> b.      Whether Main Line Health intentionally disclosed the Class members' individually-identifiable patient health information to Meta;
>
> c.      Whether the Class members consented to Main line Health's disclosure of their individually-identifiable patient health information to Meta;
>
> d.      Whether the Class members are entitled to damages as a result of Defendant's conduct; and
>
> e.      Whether Main Line Health's knowing disclosure its patients' individually identifiable health information to Meta is "criminal or tortious" under 18 U.S.C § 2511(2)(d).

46.     Plaintiff also anticipates that Defendant will raise defenses common to the Class.

47.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(3), because Plaintiff's claims are typical of the claims belonging to the Class members.  Plaintiff and the Class members were harmed by the same wrongful conduct perpetrated by Defendant that caused their individually-identifiable patient health information to be intercepted and disclosed without notice or consent.  As a result, Plaintiff's claims are based on the same facts and legal theories as the Class members' claims.

48.     This action is properly maintained as a class action under Fed. R. Civ. P. 23(a)(4), because Plaintiff will fairly and adequately protect the interests of all the Class members, there are no known conflicts of interest between Plaintiff and the Class members, and Plaintiff has retained counsel experienced in the prosecution of complex litigation.

49.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because common questions of law and fact predominate over  questions affecting the individual Class members, because a class action is superior to other  available methods for the fair and efficient adjudication of these claims and because important public interests will be served by addressing the matter as a class action.  Further, the prosecution of separate actions by the individual Class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and substantially impair the Class members' ability to protect their interests.

**COUNT I**
**Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq.***

50.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

51.     The Class members' use of Main Line Health's website constitutes an electronic communication under the ECPA.  *See* 18 U.S.C. § 2510(12).

52.   Main Line Health's website is an "electronic communication service" under the ECPA. *See* 18 U.S.C § 2510(15).

53.   Plaintiff and the Class members used Main Line Health's website to engage in electronic communications with Main Line Health about their individually-identifiable patient health information under 43 U.S.C. § 1320(d)(6), because the information they communicated was received by a healthcare provider, identified the individual making the communication, and related to their past, present, or future physical or mental health or condition, their receipt of health care, and/or their payment for that care.

54.   Main Line Health violated the ECPA by working with Meta to design Meta Pixels that automatically intercepted the characteristics and content of electronic communications Plaintiff and the Class members made about their individually-identifiable patient health information on its website and caused this data to be transmitted to Meta despite knowing (or having reason to know) that Meta was obtaining this information unlawfully. *See* 18 U.S.C. §§ 2511 (1)(a), 2511(c)–(d), 2511 (3)(a); 42 U.S.C. § 1320(d)(6).

55.   Main Line Health is not exempt from ECPA liability under 18 U.S.C. § 2511(2)(d) on the ground that it was a participant in Plaintiff's and the Class members' communications about their individually-identifiable patient health information on its website, because it used its participation in these communications to improperly share Plaintiff's and the Class members' individually-identifiable patient health information with Meta, a third-party that did not participate in these communications, that Plaintiff and the Class members did not know was receiving their individually-identifiable patient health information, and that Plaintiff and the Class members did not consent to receive this information.

56.   As such, Main Line Health cannot viably claim any exception to ECPA liability.

57.     Any person whose electronic communication is intercepted in violation of ECPA has a private right of action under 18 U.S.C. §2520(a).

58.     As a result of Defendant's violation of the ECPA, Plaintiff is entitled to all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

**COUNT II**
**Negligence**

59.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

60.     Plaintiff and the Class members have communicated individually-identifiable patient health information to Main Health through its website, *https://www.mainline health.org*, and/or received healthcare services from doctors employed by Main Line Health.

61.     By virtue of creating and maintaining its website as a public healthcare resource and its employment relationship with its doctors, Main Line Health has assumed a duty to keep confidential all individually-identifiable patient health information Plaintiff and the Class members communicate.

62.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing a Confidentiality Policy that defines "privileged information" with respect to its patients to include "data regarding... diagnosis and procedures, content of medical records and any personal information" and represents "it is the policy of Main Line Health System that all employees... are required to maintain the confidentiality of all privileged information [including] data that can be communicated... electronically... regarding... patient information (*e.g.* diagnosis, content of medical records)." *See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.mainlinehealth.org/-/media/ files/pdf/basic-content/careers/new-hire/confidentiality-policy.pdf?la=en.*

63.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing a Confidentiality Policy representing that: "Law protects the confidentiality of privileged information, and as an employee of the Main Line Health System, it is my responsibility to preserve and protect this confidentiality." *Id.*

64.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing Patient Privacy Policies representing that: "We are required by law to maintain the privacy of your health information" and "make sure that your PHI is kept private." *See* Notice of Privacy Practices, *https://www. mainlinehealth.org/about/policies/patient-privacy-policies.*

65.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing Patient Privacy Policies representing that: "uses and disclosures of PHI… permitted under the laws that apply to us will be made only with your written permission" and "except as… permitted by law, we will seek your written permission prior to using or sharing your information for marketing purposes or selling your information." *Id.*

66.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing Patient Rights and Responsibilities representing that: "You have the right to… expect all communications and records related to care, including who is paying for your care, to be treated as private" and "have the right to… receive care in a safe setting free from any form of abuse, harassment, and neglect." *See* Main Line Patient Rights & Responsibilities, *https://www.mainlinehealth.org/patient-services/ patient-rights-and-responsibilities.*

67.     Main Line Health assumed a duty to keep Plaintiff's and the Class members' individually-identifiable patient health information confidential by issuing a Web Privacy Statement representing that it "will not intentionally share [information concerning a patient's specific medical or health condition] with any third party."   *See* Web Privacy Statement, *https://www.main linehealth.org/about/policies/web -privacy-statement.*

68.     Main Line Health has a legal duty not to disclose Plaintiff's and the Class members' medical records for marketing purposes without their express written authorization under multiple federal laws.  *See, e.g.,* 42 U.S.C. § 1320; 45 C.F.R. §§ 164.501; 164.508(a)(3), 164.514(b)(2)(i).

69.     Main Line Health has a legal duty to keep Plaintiff's and the Class members' medical records confidential and private absent express written authorization under Pennsylvania law.  *See, e.g.,* 28 Pa. Code § 115.27.

70.     Main Line Health has breached the various duties of care it owes and assumed by placing computer code on its website that intercepts the characteristics and contents of communications about individually-identifiable patient health information and automatically transmits this data to Meta, putting this data to its own commercial use, and allowing Meta to put this data to its own commercial use, without providing adequate notice to users of its website, or receiving their informed consent.

71.     Plaintiff and the Class members have suffered damages as a direct and proximate result of Main Line Health's breach of its various duties of care in that:

      a.     Main Line Health received substantial revenue from Meta in return for its access to, and use of, Plaintiff's and the Class members' individually-identifiable patient health information that should belong to Plaintiff and the Class members;

      b.     Main Line Health received substantial commercial benefit from its own access to, and use of, Plaintiff's and the Class members' individually-identifiable patient health information that should belong to Plaintiff and the Class members;

c.      Main Line Health has failed to provide Plaintiff and the Class members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information; and

d.      Main Line Health's actions have exposed individually-identifiable patient health information that Plaintiff and the Class members intended to keep private, causing them embarrassment, humiliation, emotional harm, and distress.

72.     By sharing Plaintiff's and the Class members' individually-identifiable patient health information with Meta in contravention of many duties requiring it to keep such information private, putting this information to its own commercial use without notice or consent, and allowing Meta to put this information to commercial use without notice or consent, Main Line Health proximately caused the damages claimed herein.

**COUNT III**
**Invasion of Privacy - Intrusion Upon Seclusion**

73.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.     The common-law tort of intrusion protects others from intentionally intruding into a communication or matter as to which another has a reasonable expectation of privacy.

75.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Health's website, because doctor-patient communications inherently contain details of patients' physical and medical conditions that are universally understood to be personal, private, and deserving of the strictest confidentiality.

76.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because they involved individually-identifiable patient health information that Main Line Health was under a legal duty to shield from disclosure.

77.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Confidentiality Policy defines "privileged information" with respect to its patients to include "data regarding…

diagnosis and procedures, content of medical records and any personal information" and represents "it is the policy of Main Line Health System that all employees… are required to maintain the confidentiality of all privileged information [including] data that can be communicated… electronically… regarding… patient information (*e.g.* diagnosis, content of medical records)." *See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.mainlinehealth.org/-/media/ files/pdf/basic-content/careers/new-hire/confidentiality-policy.pdf?la=en.*

78. Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Confidentiality Policy represents that: "Law protects the confidentiality of privileged information, and as an employee of the Main Line Health System, it is my responsibility to preserve and protect this confidentiality." *Id.*

79. Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Patient Privacy Policies represents that: "We are required by law to maintain the privacy of your health information" and "make sure that your PHI is kept private." *See* Notice of Privacy Practices, *https://www. mainlinehealth.org/about/policies/patient-privacy-policies.*

80. Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Patient Privacy Policies represents that: "uses and disclosures of PHI… permitted under the laws that apply to us will be made only with your written permission" and "except as… permitted by law, we will seek your written permission prior to using or sharing your information for marketing purposes or selling your information." *Id.*

81. Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Patient Rights and

Responsibilities represents that: "You have the right to… expect all communications and records related to care, including who is paying for your care, to be treated as private" and "have the right to… receive care in a safe setting free from any form of abuse, harassment, and neglect."  *See* Main Line Patient Rights & Responsibilities, *https://www.mainlinehealth.org/patient-services/patient -rights-and-responsibilities.*

82.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Main Line Health's Web Privacy Statement representing that it "will not intentionally share [information concerning a patient's specific medical or health condition] with any third party."  *See* Web Privacy Statement, *https://www.main linehealth.org/about/policies/web -privacy-statement.*

83.     Plaintiff and the Class members have a reasonable expectation of privacy in their communications with Main Line Health's website, because Facebook's policies provide that businesses, like Main Line Health, that use Meta Pixels will not share data that they "know or reasonably should know ... includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *See* Facebook Business Tools terms, *https://www.facebook. com/legal/terms/businesstools*, at 1(h); Meta Commercial Terms, *https://www.facebook.com/legal /commercialterms*, at 3.

84.     Main Line Health intentionally intruded into Plaintiff's and the Class members' private communications on the Main Line Health website by placing computer code that enabled Meta Pixels to automatically intercept the characteristics and contents of communications about individually-identifiable patient health information and transmit this data to Meta.

85.      Main Line Health intentionally intruded into Plaintiff's and the Class members' private communications on the Main Line Health website by using the individually-identifiable

patient health information intercepted from its website to its own commercial use and allowing Meta to put this information to commercial use.

86.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it operates a healthcare system founded upon the principle that patients' communications with their healthcare providers must be kept private and confidential so doctors can make fully-informed treatment decisions to provide the most directed, appropriate care.

87.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because the information it intercepted is universally understood to be personal, private, and deserving of confidential treatment.

88.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it violated its own repeated representations about keeping individually-identifiable patient health information private, confidential, secure, and protected against unauthorized use without patients' written permission.

89.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it involved intercepting and disclosing the contents of individually-identifiable patient health information to Meta, which was not an intended recipient of, or a participant in, these communications.

90.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it did not provide notice to Plaintiff or the Class members that it would put their individually-identifiable patient health information to its own commercial use.

91.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it did not provide notice to Plaintiff or the Class members that it would share their individually-identifiable patient health information with Meta, or allow Meta to put this information to commercial use.

92.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it did not receive informed notice or written permission from Plaintiff or the Class members to put their individually-identifiable patient health information to its own commercial use.

93.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because it did not receive informed notice or written permission from Plaintiff or the Class members to share their individually-identifiable patient health information with Meta, or allow Meta to put this information to commercial use.

94.     Main Line Health's intentional intrusion into Plaintiff's and the Class members' communications with its website is highly offensive to a reasonable person, because the commercial use of Plaintiff's and the Class members' individually-identifiable patient health information provided substantial financial value and/or generated substantial economic benefit for Defendant that it did not share with Plaintiff or the Class members.

95.     Plaintiff and the Class members have suffered damages as a direct and proximate result of Main Line Health's invasion of privacy and intrusion upon their seclusion in that:

     a.     Learning that Main Line Health has intruded upon, intercepted, transmitted, shared, and used their individually-identifiable patient health information (including information about their medical symptoms, conditions, and concerns, medical appointments, healthcare providers and locations, medications and treatments, and health insurance and medical bills) for commercial purposes has caused Plaintiff and the Class members to suffer emotional distress;

b.      Main Line Health received substantial financial benefits from its use of Plaintiff's and the Class members' individually-identifiable patient health information without providing any value or benefit to Plaintiff or the Class members;

c.      Main Line Health received substantial, quantifiable value from its use of Plaintiff's and the Class members' individually-identifiable patient health information, such as understanding how people use its website and determining what ads people see on its website, without providing any value or benefit to Plaintiff or the Class members; and

d.      Main Line Health has failed to provide Plaintiff and the Class members with the full value of the medical services for which they paid, which included a duty to maintain the confidentiality of their patient information.

96.      By sharing Plaintiff's and the Class members' individually-identifiable patient health information with Meta in contravention of many representations that such information would be kept private, putting this information to its own commercial use without notice or consent, and allowing Meta to put this information to commercial use without notice or consent, Main Line Health proximately caused the damages claimed herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully asks this Court for an Order:

a.      Certifying this case as a class action, appointing Plaintiff as Class Representative, and appointing Stephan Zouras LLP as Class Counsel;

b.      Entering judgment for Plaintiff and the Class members on their ECPA claim and awarding all damages available under 18 U.S.C. § 2520, including equitable or declaratory relief, compensatory and punitive damages, and attorney's fees and costs;

c.      Entering judgment for Plaintiff and the Class members on their negligence claim and awarding all available damages, including the value Main Line Health received from selling or licensing Plaintiff's and the Class members' individually-identifiable patient health information to Meta and/or sharing this information with Meta, and the value Main Line Health received from using Plaintiff's and the Class members' individually-identifiable patient health information for its own commercial benefit;

d.      Entering judgment for Plaintiff and the Class members on their intrusion upon seclusion claim and awarding all available damages, including

injunctive relief requiring Main Line Health to cease violating their privacy rights without their knowledge or consent and nominal damages of $100 per violation;

     e.    Awarding injunctive relief to Plaintiff and the Class members that includes an order barring Defendant from any further interception, transmission, or commercial use of Plaintiff's and the Class members' individually-identifiable patient health information from Main Line Health's website absent express notice and informed consent;

     f.    Awarding pre- and post-judgment interest on all damages awarded;

     g.    Awarding recovery of Plaintiff's reasonable attorneys' fees and reimbursement of their litigation expenses; and

     h.    Awarding such additional relief as justice requires.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.


                   Respectfully Submitted,

Dated: <u>March 27, 2023</u>        <u>/s/ *David J. Cohen*</u>
                   David J. Cohen
                   **STEPHAN ZOURAS, LLP**
                   604 Spruce Street
                   Philadelphia, PA 19106
                   (215) 873-4836
                   *dcohen@stephanzouras.com*

                   Ryan F. Stephan (admitted *pro hac vice*)
                   James B. Zouras (admitted *pro hac vice*)
                   Teresa M. Becvar (admitted *pro hac vice*)
                   **STEPHAN ZOURAS, LLP**
                   222 W. Adams Street, Suite 2020
                   Chicago, IL 60606
                   (312) 233-1550
                   *rstephan@stephanzouras.com*
                   *jzouras@stephanzouras.com*
                   *tbecvar@stephanzouras.com*

                   *Attorneys for Plaintiff*