**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID SMART,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MAIN LINE HEALTH and META PLATFORMS INC.,**<br><br>**Defendants.** | **Case No. 2:22-cv-05239-KNS** |

**DEFENDANT MAIN LINE HEALTH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

Plaintiff David Smart's ("Plaintiff") Amended Complaint continues to have a number of pleading deficiencies that prove fatal to his claims. Plaintiff's attempt to avoid dismissal of his claims are ineffective because he merely repeats the conclusory and deficient factual allegations in his Amended Complaint and does not provide any further legal support that make his claims viable. Therefore, Plaintiff's three claims against Defendant Main Line Health, Inc. ("Main Line Health") should be dismissed because they fail as a matter of law.

## I. Plaintiff's Wiretapping Claim Fails as a Matter of Law.

### A. The Party Exception to the Wiretap Act Forecloses Plaintiff's ECPA Claim.

Plaintiff's Opposition concedes the obvious point that Main Line Health was an intended recipient of Plaintiff's communications with Main Line Health's public website. *See* Pl. Mem.

Opp'n Def. Mot. Dismiss ("Pl. Opp'n") at 3, 6 (D.I. 25-1). Plaintiff's concession is dispositive of his ECPA claim.

The Third Circuit has repeatedly held a party generally cannot unlawfully intercept communications for which it is the intended recipient. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 806 F.3d 125, 142–43 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmission at issue… the defendants have done nothing unlawful under the Wiretap Act."); *see also In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 274 (3d Cir. 2016); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (all holding same). As an intended recipient to Plaintiff's communications, Main Line Health did not engage in any unlawful "interception" under the ECPA.[1]

**B. Section 2511(d)(2)'s Crime-Tort Exception Does Not Save Plaintiff's Claim.**

Plaintiff seeks to save his ECPA claim by attempting to re-characterize his allegations to fit within the carve-out to the party exception for criminal or tortious acts set forth in 18 U.S.C. § 2511(2)(d). Pl. Opp'n at 6–8. He does so by conflating his own allegations to assert that Defendant and Meta intercepted his still-unidentified communications and Defendant also disclosed these communications to Meta. *See* Am. Compl. ¶¶ 25, 54-55 (describing an "automatic" interception by/transmission of data to Meta). This circular attempt at hair splitting is unsupported by his factual allegations and unsupportable under the consistent interpretation of the Section 2411(2)(d) crime-tort exception to require that any criminal or tortious act be: (1) wholly independent of the conduct relating to the interception itself; and (2) the primary motivation or determining factor in undertaking the interception.

---

[1]Plaintiff concedes that he is not bringing this claim for the procurement of intercepted information. *See* Pl. Opp'n at 6. The ECPA does not provide a private cause of action for such. *See* Def. Mot. Dismiss at 8–9 (D.I. 23-1).

Section 2511(2)(d) makes it unlawful for anyone, even a party to the communication, to intercept a communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or any State." The Third Circuit has expressly held that this carve-out to the party exception requires a plaintiff to "plead sufficient facts to support an inference that the offender intercepted the communication for the *purpose* of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 & n.81 (3d Cir. 2015) ("all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits"); *see also Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("Congress chose the word 'purpose' for a reason. Therefore, the offender must have as her objective a tortious or criminal result.").

To avail himself of Section 2511's crime-tort exception, Plaintiff must allege that Defendant's disclosure of any communication to Meta was completely independent of the interception of the data via the Meta Pixel. Taking Plaintiff's allegations as true at this juncture, the disclosure occurred during the very act of interception by Meta via the Metal Pixel. *See* Am. Compl. ¶¶ 25, 54-55. The fatal flaw in Plaintiff's argument is that the alleged acts of 'disclosure' and 'interception' are one and the same. Based on Plaintiff's own allegations and Opposition, the crime-tort exception is inapplicable.

Moreover, courts applying Section 2511(2)(d) have "consistently ruled that a plaintiff cannot establish a defendant acted with a 'criminal or tortious' purpose simply by proving the defendant committed any tort or crime." *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (collecting cases); *Allen v. Quicken Loans Inc.*, No. CV1712352ESMAH,

2018 WL 5874088, at *5 (D.N.J. Nov. 9, 2018) ("Thus, the plaintiff must plead that the defendant intercepted the communications 'for the purpose of facilitating some further impropriety, such as blackmail,' not merely that the interception itself (or the means of interception) is tortious or criminal."). Under this exception, plaintiffs must allege that either the "primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotation omitted); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 518 (cleaned up).

Plaintiff's Amended Complaint belies any suggestion that Defendant's "primary motivation" in using the Meta Pixel was to violate HIPAA. Indeed, Plaintiff expressly alleges that Main Line Health uses its website to "attract patients, enable their pursuit of medical care, foster its provision of that medical care, and support its business." Am. Compl. ¶¶ 5, 27 ("Main Line Health then uses this data and analysis for its own commercial purposes that include understanding how people use its website and determining what ads people see on its website."). In fact, the words "commercial use" or "commercial purpose" in relation to Main Line Health's alleged use of this data is recited eighteen (18) times in the Plaintiff's Amended Complaint.

Further, the Third Circuit has stated that tracking software "serve[s] *legitimate* commercial purposes." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 294 (emphasis added). Other courts have concluded likewise in holding that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary purpose was for marketing and promotional use, not to commit a tort or crime. *See, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 (N.D. Cal. Mar. 18, 2014) ("…the tort or crime exception cannot apply where the interceptor's purposes have plainly not been to perpetuate torts on millions of Internet users, but to make money."); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6

(N.D. Cal. May 21, 2021) (finding crime-tort exception inapplicable where Google's alleged interceptions were financially motivated); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 519 (dismissing Plaintiff's § 2511(2)(d) claim where defendant's purpose was "to make money by providing a valued serves to commercial websites."). The absence of any plausible allegation of criminal or tortious purpose is fatal to Plaintiff's claim.

Plaintiff's argument also ignores that Main Line Health's efforts to promote and enhance its website and patient portal is consistent with the core federal mission to improve care and patient communication through online platforms. Plaintiff's allegations demonstrate that Main Line Health's purpose in allegedly intercepting the parties' communications was to enhance and promote its online platforms for communicating with patients and the public at large; to wit, to make its website and portal more useful, useable and user friendly. Am. Compl. ¶¶ 5, 27. As the Office of Civil Rights acknowledges in its recent guidance cited by Plaintiff: "After information is collected through tracking technologies from websites or mobile apps, it is then analyzed by owners of the website or mobile app ('website owner' or 'mobile app owner'), or third parties, to create insights about users' online activities. Such insights could be used in beneficial ways to help improve care or the patient experience." HHS.gov, Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, at 2/12 (Dec. 1, 2022) (emphasis added).[2]

---

[2] Improving health care and the patient experience through the Internet has been a two-decade effort. In 2004, President Bush first ordered the Department of Health and Human Services (HHS) to "establish . . . the position of National Health Information Technology Coordinator," who would "develop, maintain, and direct the implementation of a strategic plan to guide the nationwide implementation of interoperable health information technology in both the public and private health care sectors that will reduce medical errors, improve quality, and produce greater value for health care expenditures." Executive Order 13,335—*Incentives for the Use of Health Information Technology*, §§ 1, 3 (Apr. 27, 2004). The 2009 passage of the Health Information Technology for Economic and Clinical Health Act (the "HITECH Act") created the Office of the National Coordinator for Health Information Technology (ONC) to "review and determine whether to

### B. Plaintiff Has Not Alleged Any Specific Facts About the Contents of Any Alleged Communication that Was Disclosed to Meta.

Plaintiff's Opposition also ignores a further fatal problem with his ECPA claim – that he has not alleged any specific disclosure that was made to Meta about his interactions on the Main Line Health website. Instead, his Amended Complaint relies on hypothetical scenarios regarding what could or may happen when a hypothetical user conducts particular searches on the Main Line Health website. Plaintiff's reliance on such hypotheticals makes the recent decision in *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 2349606, at *5 (N.D. Ill. Mar. 3, 2023), particularly instructive. That court dismissed the plaintiff's ECPA claim against a health system for using the Meta Pixel because the plaintiff did not identify the particular communications that were allegedly disclosed when the plaintiff interacted with the website. Despite having amended his complaint, Plaintiff still fails to identify the particular communications that he claims were intercepted – and certainly does not allege facts sufficient to show that such communications contained "personal health information" within the definition of the HIPAA provisions he cites.

This glaring failure is exactly what led the *Kurowski* court to dismiss the plaintiff's ECPA claim after rejecting her argument (parroted by Plaintiff here) that an unauthorized disclosure of "personal health information" in violation of HIPAA (42 U.S.C. § 1320d-6) brought that claim

---

endorse each standard, implementation specification, and certification criterion for the electronic exchange and use of health information . . . ." 42 U.S.C. §§ 300jj-11(a) & (c).

The HITECH Act also established incentive payments to health care providers that adopted health information technology. *See* 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology). HHS subsequently adopted the Meaningful Use Program regulations, now known as the Promoting Interoperability Program, to implement the Congressionally mandated incentive program. *See* 75 Fed. Reg. 144, 44314 (Jul. 28, 2010). In introducing the final regulations, HHS stated: "Certified EHR technology used in a meaningful way is one piece of a broader HIT infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.* at 44321.

within the crime-tort exception of the Wiretap Act, 18 U.S.C. § 2511(d)(2). *Kurowski*, 2023 WL 2349606, at *4–5. Plaintiff's Amended Complaint is similarly deficient, and the Court therefore should hold likewise.

## II. Plaintiff's Negligence Claim Fails Because He Has Not Alleged a Viable Duty of Care or Any Harm.

Both this Court and Pennsylvania state courts have found that neither HIPAA nor Pennsylvania's analogue can establish a duty of care in common law negligence. *See* Def. Mot. Dismiss at 13–14 (D.I. 23-1). Further, Plaintiff cites no authority that suggests that the publication of privacy policies creates any duty on behalf of the publisher. *See* Pl. Opp'n at 11 & n.10.

The cases cited by Plaintiff are inapposite. The majority of these cases concern a duty to protect against the foreseeable threat of a hacker accessing the defendants' networks and maliciously misusing stolen personal information. *See Opris v. Sincera Reprod. Med.*, 2022 WL 1639417, *4-5 (E.D. Pa. May 24, 2022) (health system owed a duty to patients to protect information related to medical diagnoses, treatment, and health insurance of patients that it collected and stored on its network from hackers); *Dittman v. UPMC*, 649 Pa. 496, 508-16 (2018) (employer had a duty to safeguard employee personal information from data breaches); *In re Wawa, Inc. Data Security Litig.*, 2021 WL 1818494, at *5 (E.D. Pa. May 6, 2021) (defendant owed duty to protect customer financial data from hackers). In *Feleccia v. Lackawanna Coll.*, the Court found that the special relationship between a university and its student athletes triggered a duty to provide competent athletic trainers. 654 Pa. 324, 337-45 (2019).

None of these cases support imposition of a legal duty here. Unlike the cases cited by Plaintiff, Main Line Health does not have a special relationship with its website users that would trigger a legal duty in this case. Main Line Health's website is public and can be accessed by patients and non-patients alike. Most importantly, no patient confidential medical records are

stored, maintained, or accessed via the public website. This case does not involve the special relationship between employer and employee found in *Dittman* nor the university and student athlete relationship found in *Feleccia*. Unlike *Dittman*, Main Line Health does not require the input of any sensitive personal or financial information into its public website. None of these cases recognize a duty on behalf of the operator of a public website to maintain the confidentiality of all data relating to public use of its website. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 294 (noting that website analytics and advertising technology software "serve[s] *legitimate* commercial purposes").

Even if there were a duty to protect this information, which there is not, Plaintiff has failed to plead sufficient facts showing that any diagnosis, treatment, or medication for him or anyone else has been disclosed to any third party, let alone that any such disclosure caused cognizable harm to Plaintiff. Plaintiff's reliance on *Opris* on this point is misplaced. Unlike *Opris*, Plaintiff does not allege any economic loss from purchasing credit and identity theft monitoring services after a data breach. *Opris*, 2022 WL 1639417 at *7. In fact, Plaintiff does not plead any mitigation damages or *any* actual harm due to any transmission of data to Meta. As such, Plaintiff's negligence claim should be dismissed.

## III. Plaintiff Provides No Legal or Factual Support for His Claim that Main Line Health Intruded Upon His Seclusion.

Plaintiff's intrusion upon seclusion claim fails as a matter of law because: (1) Plaintiff's only alleged intrusion was committed by Meta; and (2) Plaintiff fails to plead facts showing Main Line Health engaged in "highly offensive" conduct that caused him harm.

Plaintiff's attempt to distinguish his intrusion claim from the one dismissed in *Kurowski* is meritless. *Kurowski*, just like this case, involves a putative class action claims against a health system for embedding third party source code on its website that allegedly transmitted personally

identifiable patient data to third parties such as Facebook and Google. *Kurowski*, 2023 WL 2349606, at *2. The plaintiffs brought claims against the defendant health system for, *inter alia*, violations of the ECPA and intrusion upon seclusion. *Id.*

The *Kurowski* court found that because the communications were intended to reach the health system, the Defendant could not have intruded upon any private domain of the plaintiffs. *Id.* at *9. Instead, the court dismissed the claim after concluding that any "intrusion upon patients' seclusion, via interception of their communications, is carried out by third parties" and not the Defendant health system. *Id.* The same factual circumstances exist here and are further underscored by Plaintiff's *admission* that Main Line Health was the intended recipient of all of the alleged communications. *See* Pl. Opp'n. at 3, 6. Plaintiff fails to provide any legal authority or factually similar case that would suggest an alternative holding.

Plaintiff also misses the mark in arguing that he only need allege "mental suffering, shame or humiliation" flowing from the alleged highly offensive conduct to state a viable intrusion upon seclusion claim. Allegations of mental suffering, shame or humiliation can support an intrusion upon seclusion claim, but only if they are sufficiently pled. Plaintiff merely states in a conclusory fashion that he has suffered "emotional distress," (Am. Compl. ¶ 95a) without any factual allegations in support of that conclusory assertion. Indeed, Plaintiff has not alleged that any of his medical records, diagnosis or health conditions have been disclosed to Meta – let alone any such highly sensitive information that might cause a person to experience mental suffering, shame or humiliation. *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 809 A. 2d 243, 247 (2002).

None of the cases cited by Plaintiff on the cognizable injury issue are instructive. Neither *Opris* nor *In Re Wawa* included an intrusion upon seclusion claim, and *Amerex Envtl. Techs*

involved completely inapposite facts. Plaintiff simply has failed to sufficiently plead that Main Line Health's actions were highly offensive or that they resulted in harm sufficient to support Plaintiff's intrusion claim.

**CONCLUSION**

For the foregoing reasons and those stated in its Motion to Dismiss the Amended Complaint, Main Line Health respectfully asks the Court to dismiss the Amended Complaint *with prejudice*.

Dated: May 1, 2023

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Edward J. McAndrew*
Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435

Paul G. Karlsgodt (*PHV* forthcoming)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
T: (303) 764-4013
F: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

Elizabeth A. Scully (admitted *PHV*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: escully@bakerlaw.com

*Attorneys for Defendant Main Line Health, Inc. d/b/a/ Main Line Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May 2023, I electronically filed the foregoing "Defendant Main Line Health Inc.'s Reply in Support of Its Motion to Dismiss Plaintiff's Amended Class Action Complaint" with the Court using the CM/EFC system, which will automatically serve all attorneys of record via the Court's CM/ECF System.

*/s/ Edward J. McAndrew*

Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435