**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID SMART,**<br>**Plaintiff,**<br>**v.**<br><br>**MAIN LINE HEALTH and META PLATFORMS INC.,**<br>**Defendants.** | **Case No. 2:22-cv-05239-KNS** |

**DEFENDANT MAIN LINE HEALTH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

Plaintiff David Smart's ("Plaintiff") Second Amended Complaint ("SAC") continues to have deficiencies that prove fatal to his claims, each of which relies on the fundamentally flawed assumption that the alleged disclosure of Plaintiff's browsing data on a *public website* somehow reveals protected health information. That assumption was recently dispelled in *American Hosp. Ass'n. v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024), in which the court held that searches on health care entities' public websites do not disclose protected health information under the HIPAA Privacy Rule. Plaintiff fails to address this fatal flaw and does not respond to directly on-point case law that supports dismissal of the SAC.

**I. Plaintiff's Argument that Defendant's Motion Is Moot Fails.**

Plaintiff's assertion that Main Line Health Inc.'s[1] ("Main Line Health") motion is moot is not only incorrect, but it is also a heavy-handed attempt to avoid having to respond to the deficiencies in his SAC. Main Line Health's motion to dismiss explains the myriad of ways that the SAC's new allegations remain insufficient to plausibly plead Plaintiff's claims as a matter of law. *See generally* Def. Mem. Supp. Mot. Dismiss ("Def. Mem.") (ECF 42-1). When the Court granted Main Line Health's prior Motion to Dismiss Plaintiff's Amended Complaint, it did not address all of Defendant's arguments for dismissal, because it found that the claims overall were not sufficiently plead. *See* Mem. Supp. Mot. Dismiss Order (ECF 37).

Plaintiff now argues, without citing any legal authority, that the arguments that the Court did not reach (because it dismissed the complaint on other grounds) should be considered implicitly rejected and rendered moot. *See* Pl. Opp'n Mot. Dismiss ("Opp'n") at 11 (ECF 43-2). However, courts routinely reserve decisions on briefed arguments where they are able to dispose of the case on independent grounds. *See Franklin v. Sessions*, 291 F. Supp. 3d 705, 713 (W.D. Pa.

[1] Plaintiff has incorrectly named Defendant as Main Line Health.

2017) ("While this narrow disposition of this matter leaves many of the specific, novel legal issues raised and argued by the parties undecided, the Court deems it inappropriate to adjudicate or opine on issues—regardless of their novelty—when the examination of such issues is not necessary to fully resolve the case before it."); *Gutierrez v. Johnson & Johnson*, 743 F. Supp. 2d 418, 423–24 (D.N.J. 2010) (citation omitted) ("But the law does not require courts to provide an exhausting analysis of every minor argument that parties raise. Rather, it is left to the 'the judge's own professional judgment,' whether to address a particular argument or not."). Nothing in the Court's prior decision renders Main Line Health's current arguments moot.

## II. *Becerra*'s Analysis Undermines Plaintiff's Claims.

All of Plaintiff's claims rest on the fundamentally flawed assumption that the information allegedly disclosed by the Meta Pixel is protected private health information. *See e.g.*, Opp'n at 10 ("Plaintiff's ECPA claim challenges Defendant's use of tracking technologies to collect and disclose his ***Private Information***[2] to third parties without his consent.") (emphasis added); *see* SAC ¶¶ 97–117 (ECF 39). Contrary to Plaintiff's flawed factual assumption, *American Hospital Association v. Becerra* holds that browsing information about searches for specific medical conditions, medical providers, and medical treatments on a health care entity's public website does not meet the statutory definition of protected personal health information. *Becerra*, 2024 WL 3075865, at *12. At most, browsing information from a public website may be "indicative" of PHI, but "that establishes nothing." *Id.* Without knowing *why* a particular user is visiting a particular page, one can never identify whether the information is the user's private medical information, someone else's medical information, or a query for general knowledge. *See* Def. Mem. at 11–13.

---

[2] In the SAC, Plaintiff defines "Private Information" as the collective of Protected Health Information and Personally Identifiable Information. *See* SAC ¶ 3.

Despite Plaintiff's attempt to brush off its implications, the *Becerra* decision completely undermines every one of Plaintiff's causes of action. Because the HIPAA Privacy Rule is inapplicable to the website browsing activity alleged in the SAC, a violation of that Rule cannot serve as the predicate for applying the crime-tort exception. Plaintiff's wiretapping claim therefore should be dismissed for the reasons stated in Main Line Health's Opening Memorandum (at pp. 4–14). Similarly, Plaintiff's negligence and intrusion upon seclusion claims are premised on alleged duties to protect personal health information. That the allegedly intercepted/disclosed information does not constitute protected personal health information eviscerates Plaintiff's claim that Main Line Health breached any duty not to disclose personal health information. *Becerra* therefore shows how all of Plaintiff's claims fail as a matter of law.

## III. Plaintiff's Wiretapping Claim Fails as a Matter of Law.

### A. Plaintiff Fails to Plausibly Allege That the Crime-Tort Exception Applies.

Plaintiff fails to refute Main Line Health's argument that the Electronic Communications Privacy Act's ("ECPA") one-party consent defense applies in this case. Therefore, that point is conceded. *See Spear v. Atrium Med. Corp.*, 621 F. Supp. 3d 553, 559 (E.D. Pa. 2022) (citation omitted) ("Plaintiffs do not respond in their brief and I take them to have conceded the point."); *Dille v. Geer*, No. CV 20-924, 2020 WL 7624835, at *19 (E.D. Pa. Dec. 22, 2020) (finding plaintiff's failure to respond to defendant's arguments meant the points were waived or conceded). Similarly, Plaintiff does not refute Main Line Health's argument that the crime-tort exception does not apply because Plaintiff alleges crimes or torts that merely reflect the act of interception itself, instead of acts secondary to the acquisition of the communication as is required by the exception. *See* Def. Mem. at 10–11. Plaintiff's failure to rebut or otherwise

respond to this argument means he has conceded this point, which is fatal to his ECPA claim. *See Spear*, 621 F. Supp. 3d at 559; *Dille*, 2020 WL 7624835, at *19.

Even if these points were not conceded, Plaintiff's bald assertion that Main Line Health's alleged purpose[3] in using this technology was to commit a criminal or tortious act against Plaintiff falls flat. *See* Opp'n at 4–7. Indeed, Plaintiff ignores his own contradictory allegations and decisions in similar cases holding that allegations like those in the SAC do not plausibly allege that Main Line Health's purpose was criminal or tortious.

Plaintiff fails to provide any useful measuring stick with which to determine one's purpose as it relates to the crime-tort exception. The bar is a high one, requiring that the plaintiff plausibly allege that the "***primary motivation*** or a ***determining factor*** in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotation and citation omitted, emphasis added). As detailed in Main Line Health's Memorandum, *Plaintiff's own allegations* contradict any suggestion that the "primary motivation" or "determining factor" of a non-profit hospital's use of this technology was to injure the plaintiff tortiously. Def. Mem. at 8. In the Plaintiff's own words, the technology was used to foster Main Line Health's provision of medical care, attract patients, and to understand how users interact with the website. *See* SAC ¶¶ 4, 172–73. Plaintiff makes no attempt to explain

[3]Plaintiff's attempt to distinguish between "motive" and "purpose" ignores historical articulations of the exception. Congress used the phrase "unlawful motive" to describe the crime-tort exception when the first version of the exception was passed in 1968. As Congress described, the exception was included so that interceptions by a party to the conversation would be forbidden if they were made "with an unlawful motive," such as "blackmailing the other party, threatening him, or publicly embarrassing him." *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010) (citing 114 Cong. Rec. 14694 (1968)).

these contradictions in his allegations, nor does he provide any binding case law supportive of using the crime-tort exception in this particular factual context.[4]

Plaintiff similarly dismisses Main Line Health's financial purpose argument without addressing the relevant facts or case law. Again, *Plaintiff's own allegations* plead that Main Line Health's purpose in using this technology was to foster its provision of medical care through commercial marketing. *See* SAC ¶¶ 172–73. The relevant factor is not whether Main Line Health "might have made money" by using the technology, but that Plaintiff's allegations show Main Line Health's primary purpose was neither criminal nor tortious. Plaintiff further ignores Main Line Health's cited case law that is persuasive and on point. *See Mrozinski v. Aspirus, Inc.*, No. 23-CV-170 at 9–10 (Wisc. Cir. Ct. Marathon Cty. Apr. 15, 2024) (dismissing Wisconsin state wiretap claim after concluding that the crime-tort exception did not apply because the defendant's purpose for using Facebook and Google tools on the website was for "marketing and/or analytics" and "[e]ven if plaintiffs' factual allegations are construed liberally, they do not support the inference that Aspirus's purpose was criminal, tortious, or otherwise injurious"); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (citations omitted) (finding the "apparent purpose" of hospital system

[4] In a Notice of Supplemental Authority, Plaintiff argues that *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024), supports his arguments. *See* ECF 44. However, *Aspen* is an out-of-circuit decision that does not assess the application of the critical *Becerra* decision to Plaintiff's ECPA and negligence claims. Main Line Health respectfully submits that the *Aspen* Court's analysis of the Confidentiality of Medical Information Act cause of action more accurately contextualizes information involved in this case and reinforces the decision in *Becerra*. *See Aspen*, 2024 WL 4119153, at 17 ("A person could very well search treatments, medical conditions, and potential providers for a partner, parent, or child. A person could also search for treatment that they ultimately do not need or are not eligible to receive. At this stage, Plaintiff's allegations do not plausibly allege that their medical information was transmitted."). Finally, *Aspen* supports the argument that Plaintiff's negligence damages fail as a matter of law by casting doubt on damages theories based on the loss of benefit of the bargain and diminution of value in personal data in data privacy cases. *See Aspen*, 2024 WL 4119153, at 15–16.

collecting information via third party software was "for market research and consumer analysis solely for the benefit of [the hospital] in better reaching and serving its patients."). While some precedent cited by Main Line Health involved non-health related data, these cases support the proposition that companies that have a financial or commercial purpose for their actions do not fall under the crime-tort exception. *See* Def. Mem. at 6–9 (collecting cases). Whether the alleged purpose in using this technology was to facilitate the provision of medical care or for commercial purposes, as alleged in the SAC, Plaintiff does not plausibly plead that Main Line Health's "primary motivation" or "determining factor" was to injure Plaintiff.

### B. Plaintiff Fails to Allege Any Plausible Interception of "Contents."

Plaintiff cites an out-of-circuit case for the proposition that URL's reflecting search queries constitute the contents of electronic communications, as opposed to merely record or routing information. *See* Opp'n at 8–9. Main Line Health respectfully submits that the in-circuit case, *Cook v. GameStop, Inc.*, 698 F. Supp. 3d 58, 70 (W.D. Pa. 2023), more accurately contextualizes the significance of a URL. As the case states, URLs are a navigational tool, not a communication between two people that has any substance or meaning that can be intercepted. *Cook*, 689 F. Supp. 3d at 70. For these reasons, Plaintiff failed to plead allegations sufficient to show that the contents of any communication have been intercepted.

## IV. Plaintiff's Negligence Claim Fails as a Matter of Law.

Plaintiff fails to provide any support for his negligence claim, choosing instead to rely on his past ineffectual arguments. Plaintiff again fails to provide any legal support for his claim that HIPAA or its Pennsylvania analogue can establish a duty of care for common law negligence or that the publication of privacy policies somehow creates any duty on behalf of the publisher. *See* Opp'n at 11–12. Instead, Plaintiff relies on his Opposition to Main Line Health's previous

motion to dismiss, which was replete with distinguishable case law regarding duty and breach. *See* Def. Reply Supp. Mot. Dismiss FAC at 7–8 (ECF 26).

In so doing, Plaintiff also fails to respond whatsoever to new case law cited in Main Line Health's instant Motion regarding the insufficiency of his allegations about damages suffered as a result of purported "commercial benefits" to Main Line Health and a failure to receive the "full value of medical services from Defendant." *See Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. CV 22-4674, 2023 WL 7017734, at *7 (E.D. Pa. Oct. 10, 2023); *Doe I v. Google, LLC*, No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Ca. Jul. 22, 2024). Instead, Plaintiff merely cites to an inapposite case, *Opris v. Sincera Repro. Med.*, 2022 WL 1639417, *8 (E.D. Pa. May 24, 2022), in support of his damages claims. As explained in Defendant's previous Reply in Support of its Motion to Dismiss Plaintiff's First Amended Complaint, *Opris* contains distinguishable facts, an argument unaddressed by Plaintiff in his current Opposition. *See* Def. Reply Supp. Mot. Dismiss FAC at 8. Unlike *Opris*, Plaintiff does not allege any economic loss from purchasing credit and identity theft monitoring services after a data breach. *Opris*, 2022 WL 1639417 at *7. In fact, Plaintiff does not plead any mitigation damages or any actual harm due to any transmission of data to Meta. As such, *Opris* does not support Plaintiff's damages theories.

In addition, a more recent Northern District of Georgia decision supports dismissal of Plaintiff's negligence claim. On August 28, 2024,[5] the United States District Court for the Northern District of Georgia dismissed, *inter alia*, similar claims for invasion of privacy—intrusion upon seclusion, negligence, and ECPA violations based on substantially similar factual allegations. *See T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-cv-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) (Ex. 1). The plaintiffs in *Piedmont* brought a putative class action

[5] *Piedmont* was decided after Main Line Health filed its opening Memorandum in support of the instant motion to dismiss.

against a health care entity for its use of tracking pixels on its website and patient portal. *See id.* at 1–2. The plaintiffs alleged the defendant used the Meta Pixel to collect their personal information and disclose it to Facebook to optimize its advertising and marketing. *Id.* at 2. The court dismissed the negligence claim for plaintiffs' failure to plead actionable damages. *See id.* at 10. The court rejected damages theories based on the alleged loss of the benefit of the bargain and diminution of value of private information, among others, because they were alleged in a "conclusory fashion" without any allegation that the plaintiffs "actually suffered any of these damages." *Id.* at *9 ("The better view from other courts around the country is that these types of damage claims are not actionable.") (citing *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339–40 (E.D. Pa. 2012)). *Piedmont*, in addition to the other supportive case law cited by Plaintiff in its opening Memorandum, therefore supports dismissal of Plaintiff's negligence claim for failure to plead cognizable damages.

**V. Plaintiff's Intrusion Upon Seclusion Claim Fails as a Matter of Law.**

Plaintiff's Opposition highlights that his intrusion upon seclusion claim is premised upon Main Line Health's alleged *disclosure* of his browsing activity, which is fatal to his claim. *See* Opp'n at 12 ("…Defendant violated his privacy rights by *knowingly sharing* his Private Information with Meta."), *id.* at 13 ("…the only way *Meta* receives Plaintiff's Private Information" is via Main Line Health).

Plaintiff ignores the litany of pertinent decisions, both in and out of circuit and including cases with practically identical fact patterns, that find that the disclosure of information to a third party is not sufficient for an intrusion upon seclusion claim. *See* Def. Mem. at 19–21. The recent *Piedmont* case makes this point clear, finding "the weight of the authority in similar pixel tracking cases is now solidly in favor of [defendant's] argument" that "[t]here is no intrusion

upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider." *Piedmont Healthcare, Inc.*, No. 1:23-cv-5416-TWT, Ex. 1, at 5–6 (collecting cases).

Instead, Plaintiff cites two, inapposite cases where *third parties* were sued for their alleged collection or possession of data, with no analysis regarding which entities actually employed the technologies. *See Doe v. FullStory, Inc*., 2024 WL 188101, at *1 (N.D. Cal. Jan. 17, 2024) (Defendants Meta Platforms, Inc., TikTok, Inc., and FullStory, Inc., sued by a user of a telemedicine company for their collection of data through web technologies placed on the telemedicine company's page); *A.B. by & Through Turner v. Google LLC*, 2024 WL 3052969, at *1 (N.D. Cal. Jun. 18, 2024)[6] (Google sued for the integration of their software kit into Android apps that allowed for Google to collect data regarding users interacting on certain applications). Plaintiff also cites a case that does not even address an invasion of privacy claim, but instead analyzed a statutory right under a Massachusetts statute that is clearly inapplicable here. *Doe v. Tenet Healthcare Corp*., 2024 WL 1756075, at *4 (D. Mass. Apr. 23, 2024). Finally, Plaintiff cites two cases that pre-date the important *Becerra* decision and do not analyze Defendant's argument regarding the voluntary sharing of information. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *9 (C.D. Cal. Feb. 1, 2024) (same); *R.C. v. Walgreen Co*., 2024 WL 2263395, at *10 (C.D. Cal. May 9, 2024). None of these cases save Plaintiff's claim.

Second, Plaintiff fails to plead highly offensive conduct that caused him harm. Plaintiff fails to address the numerous cases cited by Main Line Health and concluding that the tracking conduct at issue is not highly offensive. *See* Def. Mem. at 22–23. Instead, Plaintiff relies yet

[6] This case also involved particular circumstances regarding the privacy interests of minor plaintiffs, a consideration not applicable to this case. *A.B. by & Through Turner*, 2024 WL 3052969, at *9.

again on the assumption that the data disclosed in this case is protected health information, an inaccurate and conclusory allegation that was rejected by the *Becerra* decision.

Finally, Plaintiff confuses Main Line Health's damages argument. Main Line Health does not argue that Plaintiff needs to allege a specific damages figure to survive dismissal. Main Line Health instead argues that the SAC contains only "generic and boilerplate damages" allegations that are insufficient to support his claim. *See* Def. Mem. at 24. Indeed, Plaintiff has not alleged that any of his medical records, diagnosis or health conditions have been disclosed to Meta – let alone any such highly sensitive information that might cause a person to experience mental suffering, shame, or humiliation. *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 570 Pa. 242, 248 (2002).

None of the cases cited by Plaintiff on the cognizable injury issue are instructive. Neither *Opris* nor *In Re Wawa* included an intrusion upon seclusion claim, and *Amerex Envtl. Techs* involved completely inapposite facts. Plaintiff simply has failed to sufficiently plead that Main Line Health's actions were highly offensive or that they resulted in harm sufficient to support Plaintiff's intrusion claim.

## CONCLUSION

For the foregoing reasons and those stated in its Motion to Dismiss the Second Amended Complaint, Main Line Health respectfully asks the Court to dismiss the Second Amended Complaint with prejudice.

Dated: September 20, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Edward J. McAndrew*
Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435

Paul G. Karlsgodt (*PHV* forthcoming)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
T: (303) 764-4013
F: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

Elizabeth A. Scully (admitted *PHV*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: escully@bakerlaw.com

*Attorneys for Defendant Main Line Health, Inc. d/b/a Main Line Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September 2024, I electronically filed the foregoing with the Court using the CM/EFC system, which will automatically serve all attorneys of record via the Court's CM/ECF System.

*/s/ Edward J. McAndrew*

Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435