**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID SMART,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MAIN LINE HEALTH and META PLATFORMS INC.,**<br><br>**Defendants.** | **Case No. 2:22-cv-05239-KNS** |

**DEFENDANT MAIN LINE HEALTH, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY AND RESPONSE TO PLAINTIFF'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant Main Line Health, Inc.[1] ("Main Line Health"), by and through the undersigned counsel, hereby respectfully submits this Notice of Supplemental Authority in Support of its Motion to Dismiss Plaintiff's Second Amended Class Action Complaint and Response to Plaintiff's Second Notice of Supplemental Authority. *See* Def. Mot. to Dismiss, ECF 42; Pl. Notice Supp. Auth., ECF 47. Plaintiff's Second Notice of Supplemental Authority ignores a material factual distinction between the allegations in *Murphy v. Thomas Jefferson University Hospitals, Inc.*, No. 22-cv-4674 (E.D. Pa. Sept. 30, 2024) ("*Murphy*") and this case that makes the recent decision in *Murphy* inapposite and the decisions in *American Hosp. Ass'n. v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. Jun. 20, 2024) ("*Becerra*"), *Williams v. TMC Health*, No. CV-23-00434-TUC-SHR (D. Az. Sept. 30, 2024) ("*TMC Health*"), and *Doe v. Upperline*

[1] Plaintiff has incorrectly named Defendant as Main Line Health.

*Health Inc.*, No. 1:23-cv-01261-RLY-CSW (S.D. Ind. Sept. 24, 2024) ("*Upperline*") more appropriate comparators.

In the *Murphy* amended complaint, the plaintiffs alleged that tracking and collection technologies were being used on the hospitals' secure patient portal and mobile application and alleged that communications within the patient portal were transmitted to Meta. *See* ECF 47-1 at 1–2. The court focused on these allegations, explaining that "[b]y alleging that Defendant was able to collect and transmit this information using the Meta Collection Tools ***on Defendant's online portal and Mobile Application***, Plaintiffs have sufficiently pleaded that Defendant intercepted contents of Plaintiffs' communications under the meaning of the ECPA." *See id.* at 8 (emphasis added). The court further found that plaintiffs' allegations regarding alleged tracking on the patient portal and mobile application, which had to be accepted as true at the motion to dismiss stage, were sufficient to support an argument that individually identifiable health information ("IIHI") as protected by Health Insurance Portability and Accountability Act ("HIPAA") was being disclosed. *See id.* at 8–9.

In stark contrast, here, Plaintiff's Second Amended Complaint allegations are limited to activity on Main Line Health's ***public website***. Main Line Health has never enabled the Meta Pixel on its patient portal and Plaintiff makes no allegations that any communications or activity within the patient portal were ever transmitted to Meta. This factual distinction is critical and renders Plaintiff's factual allegations insufficient. *See* Def. Mem. in Supp. of Mot. to Dismiss at 2, ECF 42-1. As explained in Main Line Health's Memorandum in Support of its Motion to Dismiss, "only allegations regarding Plaintiff's use of Main Line Health's ***public website***, which can be accessed at any time by patients and non-patients alike, are at issue." *Id.* (emphasis added). Plaintiff's factual allegations regarding the URLs he visited that were transmitted to Meta are URLs on the ***public***

***website***, and Plaintiff has not alleged that any of his substantive communications with medical providers were ever transmitted to Meta. *Id.* at 3. The *Murphy* court's decision and analysis, which was premised on allegations regarding the alleged disclosure of substantive communications on a ***patient portal***, therefore, are inapplicable to the allegations in this case that are limited to alleged browsing history activity on a ***public website***.

Instead, the decisions in *Becerra*, *TMC Health*, and *Upperline* are more appropriate comparators because they focus on allegations regarding use of a ***public website***. The *Murphy* decision also does not analyze the application of the critical *Becerra* decision to the ECPA, negligence, and invasion of privacy claims. As explained in Main Line Health's Memorandum in Support of its Motion to Dismiss and Reply in Support thereof, the *Becerra* decision makes clear that the public browsing data at issue in this case is *not* individually identifiable health information protected by HIPAA. *See* Def. Mem. in Supp. of Mot. to Dismiss at 11–13, ECF 42-1; Def. Reply in Supp. of Mot. to Dismiss at 2–3, ECF 45. Plaintiff cannot avoid this fact that proves fatal for all of his causes of action.

Main Line Health respectfully submits that the recent decisions in *TMC Health* and *Upperline* confirm *Becerra's* finding that public website browsing information is not protected health information and further support Main Line Health's Motion to Dismiss.

On September 30, 2024, the District of Arizona granted dismissal of factually identical ECPA, negligence, and invasion of privacy claims, *inter alia*, based upon allegations regarding the plaintiffs' use of only a public website. *See generally*, Exhibit 1, *TMC Health*, No. CV-23-00434-TUC-SHR; *see also id.* at fn. 1 ("Plaintiffs do not allege any disclosure of data related to how they used Defendant's private patient portal."). For the reasons described below, the *TMC Health* decision supports numerous arguments made by Main Line Health in its Motion to Dismiss.

First, the *TMC Health* court dismissed plaintiffs' ECPA claim because they did not sufficiently allege a criminal or tortious purpose for the Defendant's use of analytics technologies on its public website. *See* Exhibit 1 at 6–8. As explained by the court, the crime-tort exception only applies if the "*purpose* for the interception—its intended use—was criminal or tortious." *Id.* at 6 (citing *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original)). The court found plaintiffs' allegations regarding the defendant's criminal or tortious purpose to commit various torts or violate various state and federal laws, including HIPAA, were "conclusory and unsupported by any facts." *Id.* at 8. The court found that the plaintiffs' allegations regarding the purpose for the technology, for website analytics, targeted advertising, and marketing purposes, prohibited a finding that the Defendant's intended use was criminal or tortious. *See id.* The same rationale applies here given Plaintiff's similar allegations regarding the various non-criminal, non-tortious purposes for Main Line Health's use of this technology, including to "attract patients, enable [Main Line Health's] pursuit of medical care, foster its provision of that medical care, support its business, provide avenue for patients to seek medical information and treatment, and provide an avenue to communicate [information] in pursuit of this education and treatment" as well as "to understand[] how Users utilize the Website" and to "be able to serve more targeted advertisements to existing and prospective patients…." *See* Second Am. Compl. ¶¶ 4, 172–73, ECF 39.

The *TMC Health* court dismissed plaintiffs' ECPA claim for the additional reason that public browsing information "does not *necessarily* implicate HIPAA" because "the Website cannot distinguish between who is a patient and who is not a patient." *See* Exhibit 1 at 8 (emphasis in original). This finding affirms *Becerra's* analysis that as a matter of law, public browsing information is not inherently private health information protected by HIPAA. *See* Def. Mem. in

Supp. of Mot. to Dismiss at 11–13, ECF 42-1; Def. Reply in Supp. of Mot. to Dismiss at 2–3, ECF 45.

Second, the court dismissed plaintiffs' negligence claim, finding that the healthcare entity "owed no duty to Plaintiffs" under Arizona law.[2] *See* Exhibit 1 at 11–12. In so doing, the court found:

> Plaintiffs do not sufficiently allege, nor is the Court independently aware of, any portion of HIPAA or the regulations promulgated by the Department of Health and Human Services requiring healthcare providers who maintain websites to protect website visitors from having their interactions with the webpage logged and shared for advertising purposes. Such an interpretation would stretch HIPAA and federal guidance implementing HIPAA to an extent completely divorced from the text.

*Id.* at 12. The court's interpretation directly supports Main Line Health's arguments that Plaintiff's allegations do not plausibly allege that HIPAA creates a duty on behalf of healthcare entities to protect public browsing information on public websites. *See* Def. Mem. in Supp. of Mot. to Dismiss at 15–17, ECF 42-1.

Lastly, the *TMC Health* court dismissed plaintiffs' intrusion upon seclusion claim because plaintiffs provided their browsing information to the healthcare provider themselves, therefore, any intrusion was carried out by a third-party entity, not the healthcare provider. The court explained:

> [A]s the Plaintiffs allege, the only *intrusion* is perpetrated by the technology companies, *not* Defendant. Plaintiffs specifically request Defendant to intrude, i.e. respond, by providing answers to healthcare questions on the Website. Plaintiffs cannot then turn around and bring a legal claim based on an interaction with a public website they not only invited but also requested.

*See* Exhibit 1 at 13 (emphasis in original). For similar reasons, the court found no intrusion into the plaintiffs' seclusion because regardless of whether the information is sensitive medical

---

[2] While the court's analysis of Arizona statutes is not relevant to Plaintiff's claims, the analysis of HIPAA's ability to create a duty on the part of a healthcare entity is plainly relevant and applicable.

information, which as explained by *Becerra* it is not, plaintiffs do not explain how their *public communications* can somehow be secluded. *Id.* at 13–14. The decision therefore mirrors Main Line Health's arguments that Plaintiff's intrusion upon seclusion claim fail as a matter of law. *See* Def. Mem. in Supp. of Mot. to Dismiss at 19–21, ECF 42-1; Def. Reply in Supp. of Mot. to Dismiss at 8–9, ECF 45.

The recent decision by the Southern District of Indiana in *Upperline* dismisses factually similar negligence and invasion of privacy claims and further supports the dismissal of Plaintiff's negligence and invasion of privacy claims. Like the *TMC Health* court found, the *Upperline* court held that plaintiff's mere browsing on a healthcare entity's ***public website*** provided nothing "relate[d] specifically to *her* health or relationship with [the healthcare entity]," and were insufficient to state a viable negligence and invasion of privacy claim. *See* Exhibit 2, *Upperline Health Inc.*, No. 1:23-cv-01261-RLY-CSW at 6 (emphasis in original).

Dated: October 2, 2024

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Edward J. McAndrew*
Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435

Paul G. Karlsgodt (*PHV* forthcoming)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
T: (303) 764-4013
F: (303) 861-7805
Email: pkarlsgodt@bakerlaw.com

Elizabeth A. Scully (admitted *PHV*)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Tel: (202) 861-1500
Fax: (202) 861-1783
Email: escully@bakerlaw.com

*Attorneys for Defendant Main Line Health, Inc. d/b/a Main Line Health*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of October 2024, I electronically filed the foregoing with the Court using the CM/EFC system, which will automatically serve all attorneys of record via the Court's CM/ECF System.

*/s/ Edward J. McAndrew*

Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386
F: (215) 568-3435