**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID SMART,**<br>**Plaintiff,**<br>**v.**<br><br>**MAIN LINE HEALTH,**<br>**Defendant.** | **CIVIL ACTION**<br><br>**Case No. 22-cv-5239-KNS** |

**ORDER CONCERNING PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

David Smart ("Plaintiff") and Main Line Health ("Defendant"), through their counsel, hereby respectfully submit this Stipulated Order Concerning Protocol for Production of Electronically Stored Information ("ESI Protocol") in this Action.

WHEREAS counsel for the Parties have met and conferred regarding the discovery of documents and electronically stored information ("ESI") in this Action and have entered into this ESI Protocol to facilitate the just, speedy, and inexpensive conduct of discovery of ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention, the Parties stipulate and agree as follows:

**1. General Provisions:**

a. **Applicability.** Unless otherwise agreed to by the parties, this ESI Protocol governs the production of documents and information in this Action. Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of the Parties under the Federal Rules of Civil Procedure or the Local Rules of the Eastern District of Pennsylvania.

b. **Proportionality.** The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) applies to the Parties' discovery efforts in this Action.

c. **Limitations and Non-Waiver.** The Parties and their attorneys do not intend by this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, or any other privilege or immunity that may be applicable. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents or ESI are preserved and may be asserted at any time. This ESI Protocol does not govern the appropriate scope of discovery under Rule 26(b)(1) or impose any obligations beyond the Federal Rules of Civil Procedure relating to discovery.

d. **Authenticity and Admissibility.** Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. The Parties reserve their right to raise objections to the authenticity or admissibility of any document or data as needed.

e. **Modification by Agreement.** Any practice or procedure set forth herein may be modified by written agreement of the Parties. Any Party added or joined to this Action and any Party to actions that may be consolidated into or coordinated with this Action after the date of this ESI Protocol that seeks to deviate from the ESI Protocol set forth herein must obtain leave of Court to do so unless all Parties consent in writing.

f. **Modification by Court Order.** Nothing in this ESI Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown,

provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Party, and the Parties shall use reasonable best efforts to negotiate an amendment of this ESI Protocol before seeking relief from the Court.

2. **Exchange of e-discovery materials:** Within 30 days of this ESI Protocol being executed, the Parties shall exchange the following information:

a. A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities;

b. A list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system;

c. A general description of the party's electronic document retention policies;

d. The parties should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility, that is, those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost;

e. A description of any problems reasonably anticipated in connection with e-discovery.

3. **E-discovery liaison:** Within 30 days of this ESI Protocol being executed, each Party shall designate a single individual through whom all e-discovery requests and responses are made ("the e-discovery liaison"). Regardless of their identity, the e-discovery liaison must

be:

a. Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions;

b. Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues;

c. Prepared to participate in e-discovery dispute resolutions; and

d. Responsible for organizing the party's e-discovery efforts to ensure consistency and thoroughness and, generally, to facilitate the e-discovery process.

**4. Retention:** The Parties shall:

a. Take steps to ensure that e-mails of identified custodians shall not be permanently deleted in the ordinary course of business and the collected electronic documents for the agreed individual custodians shall not be altered;

b. Provide notice of whether the Party deploys spam and/or virus filtering of e-mails and attachments; and documents filtered out by such systems shall be deemed non-responsive.

Within seven days of identifying the relevant document custodians, the Parties' shall implement the above procedures and each Party's counsel shall file a statement of compliance.

**5. Preservation.** The Parties shall continue to take reasonable steps to preserve potentially relevant documents and ESI in accordance with their obligations under the Federal Rules of Civil Procedure. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action.

The Parties agree that the following categories of ESI shall be deemed inaccessible and

therefore, not discoverable, and need not be preserved: (a) Backup and archive data that are substantially duplicative of data that are more accessible elsewhere.; (b) Data remaining from systems no longer in use that is unintelligible on the systems in use and where there is no reasonable way to convert the data to a universal format such as CSV, XLSX, TXT, SQL, XML, etc.; (c) Data in metadata fields that are frequently updated automatically, such as last opened date; and (d) Data from personal information management applications (such as Microsoft Outlook) (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, or Android, and devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage). Nothing in this section, otherwise, relieves any Party of its obligation to preserve unique responsive ESI, or to identify sources of ESI claimed to be not reasonably accessible.

6. **Search methodology:** If the Parties intend to employ an electronic search to locate relevant electronic documents, they shall disclose, within thirty days, any restrictions as to the scope and the method which might affect their ability to conduct a complete electronic search of the electronic documents. The Parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. The Parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames, fields, document types). A Party that intends to use search tenns to identify or cull documents for production shall, before applying any terms, provide its proposed terms to

the requesting Party and meet and confer in good faith. Any additional terms proposed by the requesting Party shall be made in good faith and reasonably tailored to the scope of discovery under Rule 26(b)(1). Once a term list is finalized by agreement or order and the corresponding searches are complete, a requesting Party may propose additional terms only upon a showing of good cause. A Party may use technology-assisted review, predictive coding, or other analytics ("TAR") to prioritize, sequence, or expedite its review without prior agreement. If a producing Party uses technology-assisted review to cull the review population, it shall disclose the form of review and the name of the tool and meet and confer in good faith upon a reasonable request. Nothing in this paragraph requires disclosure of privileged information, attorney work product, or a Party's review strategy or training judgments.

**7. Timing of e-discovery:** Discovery of electronic documents shall proceed in the following sequenced fashion:

a. After receiving requests for document production, the Parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Federal Rule of Civil Procedure 26(b)(2);

b. Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed;

c. Requests for information expected to be found in limited accessibility documents must be narrowly focused with a factual basis supporting the request; and,

d. On-site inspections of electronic media under Rule 34(b) shall not be permitted

absent a demonstration of exceptional circumstances, good cause, and specific need.

**8.** **Format:** The Parties agree to adhere to the format specifications in **Exhibit A.** When an image file is produced, the producing Party must preserve the integrity of the electronic document's contents, ( *i.e.,* its original formatting, metadata, and revision history). After initial production in image file format is complete, a Party must demonstrate particularized need for production of electronic documents in their native format.

**9.** **Privilege:** Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production.

All copies shall be returned or destroyed by the receiving party. Pursuant to Federal Rule of Evidence 502(d), the production of privileged or work-product-protected information, whether inadvertent or otherwise, does not waive any privilege or protection in this or in any other federal or state proceeding. This provision is intended to afford the Parties the maximum protection available under Rule 502(d) and is not limited by, and does not incorporate, the standard set forth in Rule 502(b). A Party seeking to claw back Privileged Material shall follow the procedures in **Exhibit B.**

The Parties will meet and confer in a good faith effort to reach an agreement on the manner in which a privilege log will be generated and the contents of such a log. The Parties shall consider whether the nature and volume of the privileged documents and ESI warrants category-by-category privilege logs, metadata log, some combination of these approaches, or another approach. The Parties need not log: (a) Communications exclusively between a party and its outside counsel regarding this litigation, and (b) Work product created by outside counsel, or by an agent of outside

counsel other than a Party, testifying expert, or third-party vendor, regarding this litigation. Redacted emails need not be logged as long as the objective metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area. Privileged members of a document family, and email threads, may each be logged as a single entry.

**10. Costs**: Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

SO STIPULATED:

Dated: July 31, 2026

By: *<u>/s/ David J.Cohen</u>*

David J. Cohen
STEPHAN ZOURAS, LLP
170 S. Independence Mall West, Suite 901
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (admitted PHV)
Michael Casas (admitted PHV)
STEPHAN ZOURAS, LLP
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com
mcasas@stephanzouras.com
*Attorneys for Plaintiff David Smart*

Dated: July 31, 2026

By: *<u>/s/ Elizabeth A. Scully</u>*

Edward J. McAndrew
PA Bar No. 77103
BAKER & HOSTETLER LLP
1735 Market Street
Suite 3300
Philadelphia, PA 19103
emcandrew@bakerlaw.com
T: (215) 564-8386

Elizabeth A. Scully (admitted PHV)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W., 1100
Washington, DC 20036-5304
Tel: (202) 861-1500
escully@bakerlaw.com

*Attorneys for Defendant Main Line Health*

**BY THE COURT:**

**SCOTT, KAI N., J.**

# EXHIBIT A

## PRODUCTION FORMAT AND SPECIFICATIONS

### A. PRODUCTION OF ELECTRONICALLY STORED INFORMATION

The Parties agree to produce ESI in the formats described below. These formats are deemed to be productions in reasonably usable form. If any Party contends that particular Documents or ESI warrant a different format, or a response to a discovery request requires the production of files in non-standard formats or unusually large files, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

a. **Standard Format/TIFF Image Files:** All documents, with the exception of Documents produced in accordance with Section A.j(i) will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the TIFF image (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image, without obscuring content not subject to redaction. TIFF image files should be provided in an "Images" folder. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

b. **Text Files:** Each Document produced under this Order shall be accompanied by a single, multipage text file containing all of the text for that item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text. The parties

shall make reasonable efforts to extract the text of each ESI item directly from the ESI native file.

c. **Bates Numbering:**

i. Each TIFF image produced under this Order should be assigned a Bates Number that must: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production: (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production. If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production. The producing party will brand all TIFF images in the lower righthand corner with its corresponding Bates number, using a consistent font type and size.

d. **Metadata Fields and Processing.**

i. ESI shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date and time zone metadata consistent with the requirements produced in the protocol. Time zone metadata shall be processed and standardized to the Coordinated Universal (UTC) time zone.

ii. Auto date/time stamps: ESI shall be processed so as to preserve and display the date/time shown in the Document as it was last saved or modified by the custodian or end user, not the date of collection or processing. If this is not technically possible, the producing party shall use its reasonable best efforts to display the field code in the Document.

iii. Hidden text: ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

iv. ESI items shall be produced with all of the metadata and coding fields set forth in **Appendix B**, to the extent that information is available.

This Protocol does not create any obligation to create or manually code fields that are not automatically generated by the processing of ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, and (g) TextPath. These fields should be populated forall produced ESI, as well as paper Documents converted to electronic form, regardless of whether the fields can be populated pursuant to an automated process.

e. **Confidentiality Designations:** If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document, in the lower lefthand corner of the Document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. To the extent responsive documents are produced in native format, confidentiality designations will be identified in the file name and on the placeholder tiff image, unless native redactions are employed.

f. **Parent-Child Relationships:** Parent-child relationships for all emails (e.g., the association between an attachment and its parent email) must be preserved by assigning sequential Bates numbers to all items within the parent-child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields. For example, if a party is producing an email with attachments, the attachments must be processed and assigned

Bates numbers in sequential order, following consecutively behind the parent email. The parties shall meet and confer regarding reasonably proportional requests for non-public documents hyperlinked within produced documents. Under no circumstances does this Order require a party to reconnect or to produce documents linked from sources external to the producing party's systems. External linked documents will not be rehydrated. The parties agree that the extraction of MS Office embedded images, MS Office embedded objects and email inline images is not required.

g. **Color.** Documents containing color need not be produced in color in the first instance, provided however, that the producing party shall retain a copy of produced hard copy documents in color. However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (i) a list of the Bates numbers of documents it requests to be produced in color format; and (ii) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests.

h. **Load Files:** All production will be provided with data load files and image load files in accordance with the technical specifications set forth in **Appendix A**. The data load file should be in standard, delimited format (e.g. .DAT load file for Concordance or Relativity). The image load file (.OPT) must reference each TIFF file in the corresponding production, and the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. Each deliverable volume should limit the directory contents to approximately 5,000 files per folder.

i. **Databases.** To the extent a response to discovery requires production of information contained in databases, the Parties will cooperate in the exchange of information concerning such databases and data sources to facilitate discussions on productions and

production format, and agree to meet and confer to discuss an appropriate production protocol for information from such databases, including but not limited to whether native production is warranted for some or all of such data. No Producing Party will produce database data prior to meeting and conferring and reaching agreement with the Receiving Party on a production format and protocol.

j. **Production of documents in native format**

i. The parties agree in Section A.a. that ESI shall be produced as TIFF images with an accompanying data load file, which will contain the ESI metadata listed in **Appendix B.** The exception to this rule shall be spreadsheet- application files (e.g. MS Excel), for which all ESI items shall be produced in native format and linked to the database by the metadata field "NativeLink."

ii. Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The producing party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format. The placeholder will be branded with the production number in the lower righthand corner and the phrase or substantially similar phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The producing party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

k. **Redactions.** In the event that the producing party finds that redactions are needed to protect from disclosure information subject to the attorney-client privilege, work product doctrine, peer review privilege, or any other applicable privilege, legal requirement, or immunity, documents may be produced with redacted TIFF image files and OCR text in lieu of unredacted TIFF image files and extracted text. In the event that the producing party finds the redaction of certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. Any metadata fields for redacted

documents that would reveal privileged information shall be excluded. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

l. **Deduplication.** ESI and other documents need only be produced once. The producing party will apply global deduplication in responsive ESI based on MD5 Hash values or an equivalent deduplication key. Emails will be deduplicated by family, not on an individual basis. Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced, and the custodian(s) of the removed duplicate(s) are entered into the Duplicate Custodian field. All natives, even deduplicated versions, will be retained in a readily accessible format.

m. **Threading.** Email thread suppression is permitted, provided that the most-inclusive message in a thread is produced together with all unique attachments and any responsive lesser-included content.

n. **Production of Transcripts**. If deposition or other transcripts are responsive, the Parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

o. **Prior Productions/Productions from other proceedings:** Notwithstanding anything to the contrary herein, production of documents made by a Producing party in other civil investigations, litigations, and/or administrative actions by federal, state, or local government entities, if relevant to the Litigation may be made in the format in which they were previously produced, including any previously produced metadata, load files and accompanying text files, and same Bates numbers and confidentiality designations. This paragraph addresses the format of production only and does not impose any obligation to produce documents produced in other proceedings.

**B. PRODUCTION OF STRUCTURED DATA**

a. Where a discovery request requires production of structured data (e.g., SQL and SAP), the Parties shall meet and confer to determine the most reasonable format of production based

on the specific circumstances and the content and format of a data extraction from such structured data source. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

## C. PRODUCTION OF HARD COPY DOCUMENTS

**a.** Each page of a hardcopy document shall be scanned into an image. The parties shall undertake reasonable efforts, if a document consists of more than one page, to unitize the document and any attachment(s) as it existed in the original when creating the image files.

**b.** The parties will make reasonable efforts to provide searchable OCR text of any paper Documents, including spreadsheets maintained in paper form that were scanned or otherwise converted into electronic form prior to the time the Documents are first produced in this Litigation. The parties acknowledge, however that not all Documents may lend themselves to the generation of accurate OCR.

**c.** If a producing party intends to produce any hard copy documents in any manner other than as specified herein, the producing party shall notify the Requesting Party of its intent, including production format (e.g., produced as paper, made available for inspection). If the proposed production format is not acceptable to the Requesting Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Documents.

**Appendix A: Production Delivery Requirements**

Image Load Files

- Image load (cross-reference) files should be produced in Concordance Image (Opticon) format.
- The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (*e.g.*, ABC001.OPT).
- The volume names should be consecutive (*e.g.* ABC001, ABC002, et seq.).
- There should be one row in the load file for every TIFF image in the production.
- Every image in the delivery volume should be cross-referenced in the image load file.
- The imageID key should be named the same as the Bates number of the page.
- Load files should not span across media (*e.g.*, CDs, DVDs, hard drives, etc.), *i.e.*, a separate volume should be created for each piece of media delivered.
- Files that are the first page of a logical Document should include a "Y" where appropriate.
- Subsequent pages of all Documents (regular document, email, or attachment) should include a blank in the appropriate position.

Sample Concordance Image (Opticon)
Load File:

MSC000001,MSC001, .\VOL01\IMAGES\001\MSC000001.TIF,Y,,, 3
MSC000002,MSC001, .\VOL01\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001, .\VOL01\IMAGES\001\MSC000003.TIF,,,,
MSC000004,MSC001, .\VOL01\IMAGES\001\MSC000004.TIF,Y,,, 2
MSC000005,MSC001, .\VOL01\IMAGES\001\MSC000005.TIF,,,,

Concordance Data Load Files:

- Data load files should be produced in Concordance .DAT format.
- The data load file should use standard Concordance delimiters:
- Comma - ¶ (ASCII 20);
- Quote - þ (ASCII 254);

- Newline - ® (ASCII174).
- The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
- All date fields should be produced in mm/dd/yyyy format, if possible.
- All attachments should sequentially follow the parent Document/email.
- Use carriage-return to indicate the start of the next record.
- The name of the data load file should mirror the name of the delivery volume, and should have a

  .DAT extension (*e.g.*, ABC001.DAT)
- The volume names should be consecutive (*e.g.*, ABC001, ABC002, et seq.). Sample

  Concordance .DAT Load File:

  þBegBatesþ¶þEndBatesþ¶þBegAttachþ¶þEndAttachþ¶þPgCountþ¶þCustodianþ¶þO

  CR/Extracted Textþ

  Text Files

- OCR or Extracted Text files shall be provided in a separate directory containing Document level text files.

**Appendix B**

**REQUIRED METADATA FIELDS**

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments to an email | x | x | |

| | | | | |
|---|---|---|---|---|
| Custodian | Custodian of the information, assigned during collection | x | x | x |
| Duplicate Custodian | Names of all other custodians who possessed the document. | x | x | x |
| File Name | File name of document | | x | |
| File Extension | File extension of document | | x | |
| Email Subject | Subject of email | x | | |
| Subject | Document subject | | x | |
| Author | Document author | | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date/Time Sent | Date/Time sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date/Time Received | Date/Time received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date Created | Date created | | x | |
| DateLastModified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of email or electronic file | x | x | |
| Email Thread Family ID (if email threading is used by Producing Party) | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order. | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |

| | | | | |
|---|---|---|---|---|
| PII/Personal Data | User-generated field that will indicate PII/Personal Data. "X" is an acceptable indicator that the document is Confidential. Otherwise, blank. | x | x | x |
| NativeLink | Relative file path to each native file on the Production Media. | All documents produced in native format | | |
| TextPath | Relative file path to each extracted text/OCR text file on the Production Media. | x | x | x |

**EXHIBIT B**
**CLAWBACK PROCEDURES**

Any party who has received a notification of disclosure of Privileged Material from a Producing Party shall follow the following procedure to ensure all copies of Privileged Material are appropriately removed from the Receiving Party's system:

i. Locate each recalled document in the document review/production database and delete or sequester the record from the database;

ii. If there is a native file link to the recalled document, remove or sequester the native file from the network path;

iii. If the database has an image load file, locate the document image(s) loaded into the viewing software and delete or sequester the image file(s) corresponding to the recalled documents.;

iv. Apply the same process to any additional copies of the document or database, where possible;

v. Locate and destroy or sequester all other copies of the document, whether in electronic or hardcopy form. To the extent that copies of the document are contained on write-protected media, such as CDs or DVDs, these media shall be destroyed and rendered unusable or sequestered, with the exception of production media received from the recalling party, which shall be treated as described herein;

vi. If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the Receiving Party shall destroy and render unusable the original production media; or (ii) allow the Receiving Party to retain the original production media, in which case the Receiving

Party shall take steps to ensure that the recalled document will not be used; and

vii. Confirm that the recall of Privileged Material under this procedure is complete by way of letter or email to the Party seeking to recall Privileged Material.

Upon the Parties reaching an agreement or resolution that the Privileged Material has properly been clawed back, or the Court's Order sustaining a privilege claim as to Privileged Material, the specific Privileged Material shall no longer be sequestered and shall be permanently deleted.